STATE OF NORTH CAROLINA
v.
ALFONZA DAWNTA COLTRANE, Defendant.
No. COA06-1286
Court of Appeals of North Carolina.
Filed August 7, 2007.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Tracy C. Curtner, for the State.
Anne Bleyman for defendant-appellant.
BRYANT, Judge.
Alfonza Dawnta Coltrane[1] (defendant) appeals from a 12 April 2006 judgment entered consistent with jury verdicts finding him guilty of failing to heed light and siren, felony operation of a motor vehicle to elude arrest, exceeding the posted speed limit, failing to drive vehicle on the right half of the highway, and failing to stop for a stop sign.
The State presented evidence tending to show: On 15 December 2002 at approximately 11:37 p.m. Officer Jay Carter with the Liberty Police Department was on routine patrol in his police car when he observed a red Acura speeding through town. Officer Carter followed the vehicle, estimating the Acura's speed to be approximately fifty miles per hour in a thirty-five mile per hour zone. Officer Carter stopped his patrol car and with a stationary radar, clocked the Acura's speed at forty-nine miles per hour. He resumed following the Acura, while the driver accelerated to approximately eighty miles per hour. Officer Carter activated his blue lights, but the driver of the Acura failed to stop. Officer Carter activated his siren, but the driver continued to speed away. The driver crossed center lines, failed to stop at stop signs, and drove in a careless and reckless manner. After entering Alamance County, the driver of the Acura suddenly stopped the vehicle in the middle of the road. Two occupants of the Acura exited the vehicle; one from the driver's side door, the other exited the passenger's side door. Officer Carter recognized the driver as defendant based upon previous encounters with him. Despite Officer Carter yelling for defendant to stop, defendant ran away from Officer Carter, and proceeded to run through several residential yards until Officer Carter lost sight of him near defendant's residence. Officer Carter was unable to locate defendant and returned to his patrol car. At that time, he found a teenage girl in the backseat of the Acura. Officer Carter called for back up assistance to retrieve the girl, tow the Acura, and have arrest warrants issued for defendant. The Acura was not owned by defendant.
On 30 December 2002 warrants were issued for defendant's arrest on misdemeanor charges of: speeding; failing to drive on the right side of the highway; failing to heed light or siren;driving while license revoked; failing to stop for a stop sign; reckless driving; resisting a public officer; and operating a motor vehicle emitting white or clear lights on the rear of the vehicle. A warrant was also issued for a felony charge of speeding to elude arrest. These offenses were allegedly committed on 15 December 2002. Officers were initially unable to locate defendant, but defendant was later arrested on 1 October 2004.
On 13 January 2005 defendant was tried in Randolph County District Court and convicted on each of the misdemeanor charges, which defendant appealed to Superior Court. As to the felony offense of speeding to elude arrest, defendant waived a probable cause hearing, and the case proceeded to Superior Court. On 6 June 2005 the grand jury issued a one count indictment for felony speeding to elude arrest.
On 11 April 2006, defendant's case was tried before a jury during the Criminal Session of Guilford County Superior Court, the Honorable R. Stuart Albright, judge presiding. The charges of driving while license revoked and operating a motor vehicle emitting white or clear lights on the rear of the vehicle were dismissed. On 12 April 2006 a jury found defendant guilty of the remaining charges (misdemeanor failing to heed light and siren; speeding; failing to drive vehicle on the right half side of the highway; failing to stop at a stop sign; reckless driving; resisting a public officer; and felony operation of a motor vehicle to elude arrest). The trial court arrested judgment on the charges of reckless driving and resisting a public officer and defendant was sentenced to a minimum term of eleven months to a maximum term of fourteen months.[2] Defendant appeals.
Defendant argues the trial court erred by: (I) admitting 404(b) evidence of defendant's similar driving offenses and fleeing to elude arrest and (II) calculating his prior record level incorrectly.

I
Defendant argues the trial court erred by admitting 404 (b) evidence. Specifically, the prosecution introduced evidence regarding defendant's subsequent offenses of felony speeding to elude arrest, failing to heed lights or siren, and failing to yield at a stop sign or flashing red light in order to establish the identity of defendant as the perpetrator of the crimes at issue. Rule 404 (b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404 (b) (2005). "Rule 404 (b) is one of inclusion, 'subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.'" State v. Stevenson, 169 N.C. App. 797, 800, 611 S.E.2d 206, 209 (2005) (quoting State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)) (emphasis in original). Where evidence of other conduct or other crimes is introduced for some purpose other than to establish a defendant's propensity to commit a particular crime, "the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." Id. Once the court determines that the evidence is admissible, the court must then conduct a Rule 403 balancing test to determine whether the probative value of the evidence outweighs the danger of unfair prejudice to the defendant. See N.C. Gen. Stat. § 8C-1, Rule 403 (2005). This determination is within the discretion of the court and abuse of discretion occurs only where the trial court's ruling is "so arbitrary that it could not have resulted from a reasoned decision." State v. Bidgood, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202, cert. denied, 354 N.C. 222, 554 S.E.2d 647 (2001).
Two years after the date of offense in the present case (12 December 2004) defendant engaged in actions involving the commission of motor vehicle offenses and fleeing to elude arrest which were substantially similar to the current facts. On that date, defendant was observed by Officer Ray Chapuis, formerly of the Liberty Police Department, driving a gold Chrysler Concord in the town of Liberty. Officer Chapuis knew defendant from prior motor vehicle stops involving defendant, and knew his license to be revoked. After passing defendant as he came toward his marked patrol car, Officer Chapuis made a U-turn and began following the vehicle driven by defendant. This vehicle was not owned by defendant. Officer Chapuis activated his blue lights and siren, but defendant did not stop. Officer Chapuis chased defendant and defendant sped up. Officer Chapuis continued to follow defendant and observed defendant failing to stop at stop signs, driving left of center, and driving erratically. Defendant then abruptly stopped the vehicle he was driving, and exited from the driver's side. Another person exited from the passenger's side. Defendant ran on foot and Officer Chapuis chased him through several residential yards before losing sight of him. Defendant was subsequently arrested and charged and was found guilty by a jury on 1 February 2006 (prior to the 12 April 2006 jury verdict in this case) of felony fleeing to elude arrest, failure to heed light or siren, failure to yield at a stop sign and/or flashing red light, and transporting unsealed wine/liquor in the passenger area of a vehicle.
In the instant case, after a voir dire of Officer Chapuis, the State moved to admit his testimony as to defendant's 12 December 2004 actions and prior convictions as evidence of identity. Defendant objected, arguing that this evidence was inadmissible, and contending that it was offered for an improper purpose of proving that defendant had the disposition to commit the offense of fleeing to elude arrest. The trial court allowed Officer Chapuis' testimony and stated after the voir dire that "in a criminal case the identity of the perpetrator of the crime is always a material fact. In this case, at least at this point, identity does appear to be an issue." The trial court found the evidence was offered to prove identity and that it did so by establishing several similarities between the two cases including the following: that defendant was driving a car and committed several violations of the motor vehicle laws; when Officer Chapuis activated his blue light and siren, defendant sped up in an attempt to get away from Officer Chapuis; defendant was driving a car which he did not own; during the chase, defendant abruptly stopped his car in the middle of the road, exited the driver's side, and escaped by running away on foot. While noting that identity of the perpetrator is always a material fact in any criminal case, the trial court found that all of the facts of the 12 December 2004 chase involving Officer Chapuis were substantially similar to the facts in the instant case and tended to prove the identity of defendant.
We agree with the trial court that the evidence admitted here is sufficiently close in time and unusually similar in nature to show defendant's identity. See State v. Gary, 348 N.C. 510, 521, 501 S.E.2d 57, 64-65 (1998) (quotation omitted) ("In order for evidence of [a] defendant's prior crimes or bad acts to be admissible to show the identity of the defendant as the perpetrator of the crime for which he is being tried, there must be some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes."); State v. Brewington, 170 N.C. App. 264, 278, 612 S.E.2d 648, 657, disc. review denied, 360 N.C. 67, 621 S.E.2d 881 (2005) ("To be relevant in a particular case, evidence of prior bad acts must be sufficiently similar to the crime charged and be temporally proximate to that crime.").
During the charge conference, the trial court provided the following limiting instruction:
Evidence has been received tending to show that on December 12, 2004 the Defendant operated a motor vehicle to elude arrest. This evidence was received solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed. If you believe this evidence, you may consider it, but only for the limited purpose for which it was received . . . I instruct you that the State has the burden of proving the identity of the Defendant as the perpetrator of the crime charged beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the Defendant was the perpetrator of the crime charged before you may return a verdict of guilty.
The trial court clearly communicated to the jury that the evidence could only be considered for the limited purpose of establishing identity . This assignment of error is overruled.

II
Defendant argues the trial court erred by calculating his prior record level incorrectly. Defendant is correct in his assertion that "it would be unjust to allow a sentence to stand where it has been made to appear that the prior record level has been erroneously calculated due to a subsequent reversal of a conviction on appeal[.]" See Bidgood, 144 N.C. App. at 275-76, 550 S.E.2d at 204 (remand for resentencing where one of the prior convictions used to arrive at the defendant's prior record level was subsequently overturned on appeal). However, where the majority opinion in State v. Coltrane,___ N.C. App. ___, ___ S.E.2d ___, 2007 N.C. App. LEXIS 1320 (No. COA06-895)(June 19, 2007) has found no error in determining defendant's 12 December 2004 convictions, defendant's argument is misplaced.
"When a defendant assigns error to the sentence imposed by the trial court our standard of review is whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing." State v. Chivers, ___N.C. App. ___, ___, 636 S.E.2d 590, 593 (2006) (quotation omitted). "The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court . . . finds to have been proved in accordance with this section." N.C. Gen. Stat. § 15A-1340.14 (a) (2005). Each prior Class E, F or G felony conviction is assigned four points; each prior Class H or I felony conviction is assigned two points; each misdemeanor conviction as defined in the statute is assigned one point. See N.C. Gen. Stat. § 15A-1340.14(b)(3), (4) and (5). If the assignment of points gives a defendant at least five but not more than eight points, his corresponding prior record level for sentencing is a Level III. If the assignment of points gives defendant at least nine but not more than fourteen points, his corresponding prior record level is a Level IV. N.C. Gen. Stat. §15A-1340.14(c) (2005).
In the present case, the sentencing worksheet completed by the trial court listed the following prior felony convictions:
1. Fleeing to Elude Arrest (04 CRS 58421)  conviction date of 2/1/06 in Randolph County  Class H;
2. Possession of Firearm by Felon (03 CRS 102695)  conviction date of 6/8/04 in Guilford County  Class G;
3. Possession with intent to sell and distribute cocaine (02 CRS 52033)conviction date of 7/30/02 in Alamance County  Class H; and
4. Fleeing to Elude Arrest (03 CRS 102696)  conviction date of 6/8/04 in Guilford County  Class H.
In calculating defendant's prior convictions, the trial court counted one prior Class G felony yielding four points; three prior Class H felonies yielding six points; and two prior misdemeanors yielding two points. Defendant had a subtotal of twelve prior record points. Two additional points were added because all of the elements of the present offense are included in a prior offense for which defendant was convicted (one point) and because the offense was committed while on probation (one point). This yielded a total of fourteen prior record points, resulting in a felony prior record Level IV. Defendant was convicted of one of the three Class H felonies counted by the trial court on the same date upon which he was also convicted of the Class G felony of possession of a firearm by a felon. The sentencing statute instructs as follows:
(d) Multiple Prior Convictions Obtained in One Court Week  For purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used. If an offender is convicted of more than one offense in a single session of district court, only one of the convictions is used.
N.C. Gen. Stat. § 15A-1340.14 (d) (2005). Here, even though defendant's Class H felony conviction of fleeing to elude arrest (obtained on the same date as his Class G felony conviction) should not have been added to his total points, his prior record level remains a Level IV. Any error in the trial court's computations under these circumstances is harmless. See State v. Bethea, 173 N.C. App. 43, 60-61, 617 S.E.2d 687, 697-98 (2005) (harmless error where trial court counted two of the defendant's convictions which occurred on the same date resulting in total prior record points of eleven, when including only one of those convictions would have resulted in total prior record points of nine). Defendant was properly sentenced as a prior record Level IV offender. Id. This assignment of error is overruled.
No error.
Judges WYNN and HUNTER concur.
Report per Rule 30(e).
NOTES
[1] We note defendant's name has been spelled various ways throughout the record. For consistency in this opinion, we use the spelling appearing in the judgment.
[2] The sentence was to begin to run at the expiration of a prior sentence imposed against defendant in a case involving similar offenses. See State v. Coltrane, ___ N.C. App. ___, ___ S.E.2d ___, 2007 N.C. App. LEXIS 1320 (No. COA06-895)(June 19, 2007).